OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court and the parties' briefs. Defendant-Appellant, Warren Wright, appeals the decision of the Mahoning County Court of Common Pleas which found him guilty of felonious assault and sentenced him to more than the minimum possible prison term, but less than the maximum possible prison term. On appeal, Wright makes four arguments.
 {¶ 2} First, Wright argues counsel was ineffective for not moving both to suppress the eyewitness identifications and for discovery sanctions. An eyewitness who identifies a defendant after an impermissibly suggestive pretrial lineup may be prevented from identifying the defendant in court. But an in-court identification is admissible if it is sufficiently reliable after a review of the totality of the circumstances surrounding the pretrial and in-court identifications. In this case, two eyewitnesses had ample opportunity to observe the defendant while he was committing the criminal act. One of those witnesses was acquainted with the defendant. And each witness identified the defendant by nickname and picture four days later. There are discrepancies between the description of the crime and suspects contained in the initial police report compiled on the night in question. But given the totality of the circumstances, these two witnesses would have been able to identify Wright in court even if counsel had moved to suppress their identifications. Accordingly, Wright was not prejudiced by counsel's failure to move for acquittal.
 {¶ 3} In his second assignment of error, Wright argues counsel was ineffective for failing to adequately investigate and timely move for a new trial based on the fact that one of the jurors was acquainted with a defense witness. But the fact that a juror is acquainted with a witness does not demonstrate that the juror is prejudiced against the defendant. Wright cannot demonstrate a reasonable possibility that the trial court would have granted the motion for a new trial if counsel had further investigated the nature of the relationship between the juror and the witness or had timely made that motion.
 {¶ 4} In his third assignment of error, Wright claims that he was prejudiced by the fact that trial counsel did not move for acquittal immediately after the close of the State's case and that the trial court delayed ruling on the motion for acquittal until the defense had already put on some of its witnesses. But Wright was not prejudiced by any error since the trial court could not have granted a timely motion for acquittal. The State presented sufficient evidence on each element of the offense in its case-in-chief.
 {¶ 5} Finally, Wright's fourth assignment of error argues that the trial court erred when it sentenced him. In that assignment of error, Wright argues that since the trial court made the findings required by R.C. 2929.14(B) but sentenced him to less than the maximum possible prison term for the charged offense, he cannot effectively challenge his sentence. But the statutes give an offender multiple ways to challenge a sentence for a felony sentence on appeal. Since Wright fails to clearly and convincingly prove that the facts do not support the trial court's findings or that the sentence is otherwise contrary to law, it must be affirmed. For these reasons, the trial court's decision is affirmed.
 Facts {¶ 6} On March 16, 2001, Maurice Willis was at the Pour House, a bar in Youngstown, Ohio. At trial, he testified that he was approached by a man that looked familiar but he could not remember who the man was. The man spoke to him for fifteen to twenty minutes. Maurice later identified this man as Wright. Maurice then went outside to call his wife, Rachelle, on a cell phone. He had plans to go out with Rachelle, her best friend, Shawnna Moore, and another couple, Gerald Baker and Karla Harvey. As he stood outside trying to call Rachelle, the group pulled up in a truck driven by Gerald. Maurice went back inside to return his drink, tell the bartender he was leaving, and grab a tracksuit jacket.
 {¶ 7} Maurice left the bar and walked toward the truck where his group was waiting. On the way there, he heard someone say, "What is Beamo doing up here?" Although Maurice, Rachelle, and Shawnna did not know Wright or his name, both Karla and Gerald knew Wright as "Beamo". "Beamo" has been Wright's nickname since childhood. Maurice then heard someone say, "He got a gun." He turned around and saw a man pointing a gun at his head from about an arms-length away. Maurice, Rachelle, Shawnna, and Gerald all testified at trial that Wright was the man with the gun. Maurice then pushed Wright and ran away. Wright shot at Maurice multiple times and hit him once in the leg. Eventually, Wright ran away, Maurice's group all got into the truck, and Maurice was driven to the hospital. There was some discussion on the way to the hospital that "Beamo" shot Maurice.
 {¶ 8} Conversely, Wright testified he was at the bar with two of his friends celebrating a birthday. He said that the whole time he was at the bar he played pool with his friends and that he did not speak with Maurice. His friend corroborated this testimony.
 {¶ 9} A Youngstown police officer interviewed some of the witnesses at the hospital. The police report he compiled as a result of these interviews stated that Maurice was chased in the parking lot outside the bar by two dark-skinned African-American males. No one told the officer that "Beamo" shot Maurice. This report was turned over to a detective in the Youngstown Police Department.
 {¶ 10} Four days after the shooting, the five eyewitnesses all came to the police station to speak with the detective. The detective spoke with Maurice first. Maurice told him "Beamo" was the shooter. The detective was familiar with the nickname "Beamo" and went to his desk to compile a photo array. He found five photos, including one of Wright. One of the photos contained a picture of a man in a jail inmate's uniform, but that picture was not of Wright. Maurice identified Wright as the shooter. Subsequently, each of the other witnesses also identified Wright. But the detective did not clear the room as each person reviewed the photo array, so by the time the last two reviewed the photos, all of the witnesses were in the room. After the witnesses all identified Wright, Maurice swore out a complaint against him.
 {¶ 11} The Mahoning County Grand Jury subsequently returned an indictment charging Wright with felonious assault in violation of R.C. 2903.11(A)(2) and a firearm specification. Sometime prior to trial, defense counsel received a photocopy of the pictures used in the photo array. But at trial, counsel stated that the copies he received were so bad that he could not see the faces on the pictures. Although defense counsel apparently made some effort to obtain the pictures, he never did. Counsel did not move for discovery sanctions. Counsel also did not move to suppress the eyewitness identifications of Wright as the shooter.
 {¶ 12} The matter proceeded to a jury trial. During trial, Wright's counsel moved for acquittal under Crim.R. 29(A), but that motion was not made on the record at the first possible opportunity. At the conclusion of the trial, the jury returned a verdict finding Wright guilty of both the felonious assault and the firearm specification. Wright then moved for a new trial, claiming that one of the jurors was a caseworker for one of the defense witnesses. After a hearing, the trial court denied that motion.
 {¶ 13} The trial court sentenced Wright to seven years imprisonment for the felonious assault and the mandatory three years for the firearm specification.
 Ineffective Assistance of Counsel {¶ 14} In the first two of his four assignments of error, Wright argues:
 {¶ 15} "The Appellant's convictions and sentences are in violation of the state and federal constitutions because Appellant was denied the effective assistance of counsel when counsel failed to file a motion to suppress identification evidence and demand production of the photograph array."
 {¶ 16} "Appellant was denied the effective assistance of counsel when counsel failed to properly investigate, research, and timely file a motion for new trial."
 {¶ 17} Thus, he contends his trial counsel was ineffective for these two reasons. Although these issues are separate and distinct, we must employ the same standard when judging whether counsel was ineffective.
 {¶ 18} To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate counsel's performance was deficient and that deficient performance prejudiced the defense.Strickland v. Washington (1984), 466 U.S. 668, 687. A properly licensed attorney is presumed to execute his duties in an ethical and competent manner. State v. Smith (1985), 17 Ohio St.3d 98,100. In order for a court to conclude counsel was ineffective, the defendant must overcome the presumption that, under the circumstances, the allegedly ineffective action might be considered sound trial strategy. Strickland at 698.
 {¶ 19} Ineffectiveness is demonstrated by showing that counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment. Statev. Hamblin (1988), 37 Ohio St.3d 153. The defendant must demonstrate more than vague speculations of prejudice to show counsel was ineffective. State v. Otto (1996),74 Ohio St.3d 555, 565. To establish prejudice, a defendant must show there is a reasonable possibility that, but for counsel's errors, the result of the proceeding would have been different. Strickland
at 694. A reasonable possibility must be a probability sufficient to undermine confidence in the outcome of the case. State v.Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus. The defendant bears the burden of proof in demonstrating ineffective assistance of counsel. Smith at 100.
 Identification {¶ 20} In his first assignment of error, Wright claims trial counsel was ineffective for failing to move to suppress the eyewitness identification of him as the shooter. According to Wright, his conviction was based solely on the eyewitness testimony. And he alleges that there are serious questions about the procedures the detective used in the pretrial photo array. So he claims trial counsel was ineffective for failing to move to suppress the eyewitness identifications based on the possibly impermissibly suggestive photo array. But the photos at issue are not in the record for this court to review. Recognizing that this severely hampers this court's ability to review this assignment of error, Wright further claims that trial counsel was ineffective for not making those photos a part of the record or requesting sanctions for not producing them in a timely manner. Finally, Wright acknowledges that the in-court identifications may be purged of the taint from an impermissibly suggestive pretrial identification if they are sufficiently reliable. But he argues that counsel's ineffectiveness also precludes effective review of this argument since the photos were never placed into the record.
 {¶ 21} An impermissibly suggestive pretrial identification of a defendant may taint the witness to such an extent that the witness will not be allowed to identify the defendant at trial. See State v. Jacobs, 7th Dist. No. 99-CA-110, 2002-Ohio-5240, citing United States v. Wade (1967), 388 U.S. 218; State v.Lathan (1972), 30 Ohio St.2d 92. If the pretrial identification is improper, then a witness will only be allowed to identify a defendant during trial if the identification is made "`by means sufficiently distinguishable to be purged of the primary taint.'"Wade at 241, quoting Wong Sun v. United States (1963),371 U.S. 471, 488.
 {¶ 22} The only evidence that Wright committed this crime is the testimony of the four witnesses who were present at the time of the shooting, Maurice, Gerald, Rachelle, and Shawnna (Karla was present at the shooting, but did not testify at trial). Each of these witnesses positively identified him as the shooter in court. But each of these witnesses examined the pretrial photo array in question. If trial counsel had successfully argued that these pretrial identifications were impermissibly suggestive, then the trial court would have had to suppress any identification of Wright as the shooter unless the State could prove that the witnesses' were purged of the taint from the impermissibly suggestive pretrial identification. If the State could not purge the witnesses of this taint, then it would have been difficult to convict Wright of felonious assault.
 {¶ 23} We acknowledge that the detective may have used questionable techniques in the pretrial photo array. All five witnesses came to the police station at the same time four days after the shooting. The detective spoke with Maurice first and Maurice told him that "Beamo" shot him. The detective was familiar with the nickname "Beamo" and went to his desk to compile a photo array. At his desk, he retrieved five pictures, including one of Wright. One of those photos was of a man wearing a jail inmate uniform. He showed the array to Maurice and Maurice positively identified Wright as the shooter. The detective then had Karla and Gerald review the photo array. They also identified Wright as the shooter. Finally, the detective had Rachelle and Shawnna review the photo array. When they reviewed the photo array, Maurice, Karla, and Gerald were all in the room. They too identified Wright.
 {¶ 24} The fact that the detective pulled the photographs off of his desk is troubling, especially since one of the photographs was of an inmate in his jail uniform. Given the manner in which the detective assembled the array, it appears less likely that the array contained five people which all fit the suspect's description. Furthermore, the fact that all the witnesses were in the room as some of them were looking at the photo array is also troubling. We cannot know if or how the witnesses' affected each other's identification. The fact that they were present lowers the reliability of the identifications.
 {¶ 25} Regardless, Wright was not prejudiced by counsel's failure to move to suppress this identification evidence. "[R]eliability is the linchpin in determining the admissibility of identification testimony." Manson v. Brathwaite (1977),432 U.S. 98, 114. Accordingly, an in-court identification is admissible even if the pretrial identification procedure was suggestive as long as the State can show by clear and convincing evidence that the in-court identification is reliable. Jacobs
at ¶ 16. When determining whether an in-court identification which occurs after an impermissibly suggestive pretrial identification is reliable, a court must look at the totality of the circumstances. State v. Jackson (1971), 26 Ohio St.2d 74,77. For instance, a court can consider the prior opportunity of the witness to observe the alleged criminal act, the existence of any discrepancy between any pre-lineup description and the defendant's actual description, any identification prior to the lineup of another person, identification by photograph of the defendant prior to the lineup, failure to identify the defendant on a prior occasion, and the lapse of time between the alleged act and the lineup identification. Jacobs at ¶ 15, citingWade at 241.
 {¶ 26} The circumstances in this case indicate that at least two of the in-court identifications were reliable. Gerald testified that he knew Wright prior to this incident and that he had an opportunity to see Wright outside the bar, saw him shoot at Maurice, and saw Wright standing in front of his truck. And on the way to the hospital, Karla and Gerald discussed the fact that "Beamo" shot Maurice. These facts all demonstrate that Gerald's in-court identification of Wright was reliable.
 {¶ 27} The same holds true for Maurice's in-court identification. Maurice testified that Wright spoke to him for fifteen to twenty minutes in the bar prior to the shooting. He then testified that he was an arms-length away from Wright when he first turned around and saw Wright pointing a gun at him. Maurice's opportunity to observe Wright immediately before and during the crime demonstrate the reliability of his testimony.
 {¶ 28} There is one fact which could demonstrate that those two identifications are less reliable. The police officer that interviewed the witnesses testified that Maurice told him he was attacked by two African-American males. And in the police report he wrote as a result of those interviews that the two suspects were dark-complected. But each of the witnesses at trial testified that Wright was alone when he shot Maurice. In addition, none of the witnesses testified that Wright was a dark-complected African-American, even when Wright's counsel specifically asked them this question. Thus, there is some discrepancy between the witnesses' initial description of the suspect and Wright's actual description. But this discrepancy is mitigated by the fact that the record does not indicate which witness described the attacker as dark-complected in the police report. And it is further mitigated by the fact that Maurice testified that he believed Wright had a menacing friend in the bar with him.
 {¶ 29} Given the totality of the circumstances in this case, it appears that both Maurice and Gerald would have been allowed to identify Wright in-court even if the pretrial lineup was constitutionally flawed. Accordingly, Wright was not prejudiced by the fact that trial counsel failed to move to suppress their identifications of him. The only testimony which may have been suppressed would have been Shawnna and Rachelle's. However, there is not a reasonable possibility that their additional identifications would have affected the outcome of the case since Gerald and Maurice positively identified Wright as the shooter. Since a motion to suppress would have been pointless, Wright was also not prejudiced by the fact that trial counsel did not ensure that he received legible copies of the photographs used in the pretrial photo array. For these reasons, Wright's first assignment of error is meritless.
 New Trial {¶ 30} In his second assignment of error asserting counsel's ineffectiveness, Wright argues that he was potentially denied the right to a fair trial since one of the jurors allegedly was a Department of Human Services caseworker for Wright's girlfriend, who was also a witness in this case. He used this as the basis of a motion for a new trial filed sixteen days after the jury rendered its verdict. Wright contends counsel did a poor job investigating the alleged basis for a new trial and presenting the trial court with a sufficient factual basis for the untimely motion.
 {¶ 31} Wright merely alleges that the juror knew the witness. But the Ohio Supreme Court has held that the fact that a juror is acquainted with a witness does not, in and of itself, affect the juror's ability to remain impartial. State v. Woodards (1966),6 Ohio St.2d 14, 22. A conviction will not be overturned merely because a juror knew a witness if defendant's counsel had the opportunity to ascertain this fact and there is no evidence that the juror was prejudiced against the defendant by reason of such acquaintance. Id. at paragraph three of the syllabus.
 {¶ 32} In this case, the record contains no indication that the juror was prejudiced against the defendant and his witness in any way. During voir dire, trial counsel did not ask the jurors if they were acquainted with any of the defense's potential witnesses. And trial counsel never filed any evidentiary material demonstrating any prejudice. All Wright can do is speculate that a further investigation may have produced evidence that the juror was prejudiced.
 {¶ 33} Based on the record, there is not a reasonable possibility that the outcome would have been any different if counsel had filed the motion within the fourteen-day period provided for such motions in Crim.R. 33(B) or if he had attached an affidavit stating that the juror was acquainted with the witness. Accordingly, Wright's second assignment of error is meritless.
 Motion for Acquittal {¶ 34} In his third assignment of error, Wright argues:
 {¶ 35} "Appellant was denied a fair trial by the making of a `delayed' Ohio Crim.R. 29 motion and a delayed ruling on the same."
 {¶ 36} Here, Wright claims that he was denied a fair trial when the trial court told trial counsel to reserve his Crim.R. 29(A) motion for acquittal to a later time and ruled on that motion on the record at a later time. But in the argument in support of this assignment of error, Wright concedes that this error "perhaps does not justify a reversal."
 {¶ 37} It is unnecessary to address whether there was any error regarding the timing of Wright's Crim.R. 29(A) motion and the trial court's decision to rule on that motion since the motion clearly would have been denied. Crim.R. 29(A) allows a defendant to move for acquittal on "one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." "Sufficiency of the evidence" is "`a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'"State v. Thompkins (1997), 78 Ohio St.3d 380, 386, quoting Black's Law Dictionary (6th Ed. 1990) 1433. The relevant inquiry when determining whether the evidence is sufficient to support the verdict "is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of facts." Id. at 273. Whether the evidence is legally sufficient is a question of law. Thompkins at 386.
 {¶ 38} In this case, Wright was convicted of felonious assault in violation of R.C. 2903.11(A)(2). That statute prohibits anyone from knowingly causing or attempting to cause physical harm to another by means of a deadly weapon or dangerous ordnance. Id. When viewing the evidence in the light most favorable to the State, it is easy to see that there is sufficient evidence on each element of the crime. Each of the State's eyewitnesses testified that they saw Wright approach Maurice, point a gun at him, and that Wright shot Maurice in the leg as Maurice fled. This is sufficient evidence to prove every element of the charged offense. The trial court could not have granted a motion for a directed verdict. So Wright could not have been prejudiced by the timing of counsel's motion for a directed verdict and the trial court's ruling on that motion. Wright's third assignment of error is meritless.
 Sentencing {¶ 39} In his fourth assignment of error, Wright argues:
 {¶ 40} "The trial court abused its discretion in imposing more than the minimum sentence without making factual findings to support the sentence."
 {¶ 41} Here, Wright contends that Ohio sentencing law is "madness" and that it results in cruel and unusual punishments since a trial court only needs to "recite a mantra typed on a piece of paper" to sentence an offender to more than the minimum sentence. He further argues that his inability to obtain meaningful appellate review of a sentence that is only one year shorter than the maximum prison term denies him due process of law.
 {¶ 42} In response, the State argues that a sentence which falls within the terms of a valid statute cannot amount to cruel and unusual punishment. It further argues that Wright has failed to provide examples of any other cases to demonstrate that the sentence imposed upon him was disproportionate. Finally, the State argues that Wright does have an opportunity for meaningful appellate review of his sentence. Accordingly, it argues he is not denied due process of law.
 {¶ 43} Each party bases its argument on an abuse of discretion standard. But under R.C. 2953.08(G)(2), this court no longer reviews felony sentences using this standard of review. See State v. Sheppard (1997), 124 Ohio App.3d 66, 67-68. Instead, when reviewing any sentence imposed for a felony, this court cannot reverse, vacate, or modify the sentence unless it clearly and convincingly finds either that the record does not support the sentencing court's findings or that the sentence is otherwise contrary to law. R.C. 2953.08(G)(2).
 {¶ 44} When sentencing an offender, the trial court must consider several aspects of the sentencing statutes. First, the overriding purposes of felony sentencing must be followed, namely, to protect the public from future crime by the offender and others and to punish the offender. R.C. 2929.11(A). The court must consider the need for "incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." Id. Further, the sentence must be commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim and be consistent with sentences imposed for similar crimes committed by similar offenders. R.C. 2929.11(B). Keeping these purposes in mind, if the offender has not previously served a prison term, R.C. 2929.14(B) presumes the imposition of the shortest prison term for an offense.
 {¶ 45} The trial court may only impose a sentence beyond the minimum term when it specifically finds on the record that the shortest prison term would either demean the seriousness of the offender's conduct or would not adequately protect the public from future crime by the offender. R.C. 2929.14(B). The trial court is not required to give an explanation for its finding. Rather, the trial court "must note that it engaged in the analysis and that it varied from the minimum for at least one of the two sanctioned reasons." State v. Edmonson (1999),86 Ohio St.3d 324, 326. When determining the seriousness of the offense and the likelihood of recidivism, the trial court should look to the factors in R.C. 2929.12. A trial court does not need to make any further findings if it sentences an offender to more than the minimum bet less than the maximum possible prison term for the offense.
 {¶ 46} Wright's arguments in support of this assignment of error boil down to an attack on this statutory scheme. As he concedes, the trial court made the findings required by R.C.2929.14(B). Instead, he claims his sentence is cruel and unusual and a violation of due process because it denies the possibility of effective appellate review to any offender sentenced to more than the minimum possible prison sentence if the trial court makes the findings required by R.C. 2929.14(B). But Wright's arguments are incorrect. The manner in which an offender can challenge his sentence is defined by R.C. 2953.08(G)(2), which states when this court may reverse, vacate, or modify the sentence imposed upon that offender. This statute provides that this court must affirm the sentence imposed unless it can clearly and convincingly find either that the record does not support the sentencing court's findings or that the sentence is otherwise contrary to law. Id. Challenging whether the trial court made the findings required by R.C. 2929.14(B) is merely one of the ways that R.C. 2953.08(G)(2) authorizes an appellant to challenge his sentence.
 {¶ 47} Wright could challenge his sentence by arguing that the record does not support the trial court's findings. As the Ohio Supreme Court has stated, "the [trial] court must note that it engaged in the analysis and that it varied from the minimum for at least one of the two sanctioned reasons." State v.Edmonson (1999), 86 Ohio St.3d 324, 326. This court does not need to accept the trial court's findings if they are not supported by the record. Both this and other appellate courts have entertained this type of argument on appeal. See e.g. Statev. Stewart, 149 Ohio App.3d 1, 2002-Ohio-4124; State v.Hatfield, 148 Ohio App.3d 316, 2002-Ohio-3598; State v.Anderson (2001), 146 Ohio App.3d 427; State v. Yontz (1999),135 Ohio App.3d 530; State v. Lands (Mar. 19, 2002), 7th Dost. No. 00-C.A.-261; State v. Palmer (Nov. 19, 2001), 7th Dist. No. 99 CA 6.
 {¶ 48} In this case, a review of the record demonstrates that the trial court's findings were supported by the record. The presentence investigation report indicates that Wright had an extensive juvenile record and was found guilty of at least one additional offense after he became an adult. R.C. 2929.12(D)(2) states that this is a factor which indicates that the offender is likely to commit future crimes. And none of the factors which indicate that an offender is less likely to commit future crimes appears to apply in this case.
 {¶ 49} The other way that Wright could challenge his sentence is by convincing this court that it is contrary to law. One way to do this is to argue that the sentence violates R.C.2929.11(B). That statute provides, inter alia, that a trial court should ensure that the sentence it is imposing on a felony offender is "consistent with sentences imposed for similar crimes committed by similar offenders." Id. Appellants have raised this argument before different courts. See State v. Stewart,149 Ohio App.3d 1, 2002-Ohio-4124; State v. Stern (2000),137 Ohio App.3d 110; State v. DeMastry, 5th Dist. No. 02 CA 9,2003-Ohio-5588.
 {¶ 50} Wright does make an argument somewhat along these lines in his brief. He claims that it is unfair to sentence him to one year less than the maximum possible prison term because the victim of the offense was a drug dealer rather than a "college student, housewife, or retiree", that the victim was only shot in the leg, and that he was released from the hospital the night of the shooting. But R.C. 2929.12 does not mitigate an offender's conduct merely because the victim lead a criminal lifestyle. And Wright has provided no caselaw demonstrating that the sentence imposed by the trial court is inconsistent with sentences imposed for similar crimes committed by similar offenders. Accordingly, Wright's argument in this regard is meritless.
 {¶ 51} There are other ways an offender could argue that his sentence is contrary to law. For instance, he could argue his sentence imposes an unnecessary burden on state or local government resources in violation of R.C. 2929.13(A). See Statev. Vlahopoulos, 154 Ohio App.3d 450, 2003-Ohio-5070; State v.Henning, 2d Dist. No. 19502, 2003-Ohio-2082. Thus, the mere fact that a trial court recites the findings in R.C. 2929.14(B) when sentencing an offender who has not previously served a prison term to more than the minimum offense does not mean that the defendant is denied any opportunity for meaningful appellate review. It is not the trial court's fault if the defendant does not to avail himself of those opportunities on appeal.
 {¶ 52} Although Wright argues that his sentence is cruel and unusual, "Eighth Amendment violations are rare." State v.Weitbrecht (1999), 86 Ohio St.3d 368, 371. "As a general rule, a sentence that falls within the terms of a valid statute cannot amount to a cruel and unusual punishment." McDougle v. Maxwell
(1964), 1 Ohio St.2d 68, 69. "[P]unishments which are prohibited by the Eighth Amendment are limited to torture or other barbarous punishments, degrading punishments unknown at common law, and punishments which are so disproportionate to the offense as to shock the moral sense of the community." Id. The sentence the trial court imposed was within the statutory guidelines and there is no hint that it is so disproportionate that it would shock the moral sense of the community. Accordingly, it is not cruel and unusual. Wright's arguments challenging the sentence the trial court imposed are all meritless.
 Conclusion {¶ 53} In conclusion, each of Wright's assignments of error are meritless. The in-court identifications of Wright by Maurice and Gerald were reliable, so Wright was not prejudiced by counsel's failure to move to suppress the eyewitness identifications. Likewise, Wright is unable to demonstrate that he was prejudiced by counsel's failure to timely file a motion for a new trial. He cannot demonstrate a reasonable possibility that the juror's acquaintance with his witness would prejudice the witness against him. Wright was not prejudiced by anything regarding his motion to acquit since the trial court could not have granted that motion. Wright's arguments attacking his sentence and the felony sentencing guidelines are meritless.
 {¶ 54} Accordingly, the judgment of the trial court is affirmed.
Donofrio, J., and Vukovich, J., concurs.